**James W. McCORD, Jr., Plaintiff,**

v.

**Hon. Gerald FORD et al., Defendants.**

**Civ. A. No. 74–1386.**

United States District Court, District of Columbia.

July 11, 1975.

Bernard Fensterwald, Jr., Washington, D. C., for plaintiff.

Carla A. Hills, Asst. Atty. Gen., Earl J. Silbert, U.S. Atty., Irving Jaffe, Deputy Asst. Atty. Gen., Irwin Goldbloom, Acting Deputy Asst. Atty. Gen., Jeffrey Axelrad, Washington, D. C., for defendants.

William A. Dobrovir, Andra N. Oakes, Joseph D. Gebhardt, John S. McCreery, Professor of Law, Urban Law Institute, Ronald G. Yelenik, Professor of Law, Urban Law Institute, Washington, D.C., for amici curiae.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

### I. INTRODUCTION

James W. McCord, Jr., the plaintiff in this action, was arrested on June 17, 1972 in the course of the now-infamous break-in at the offices of the Democratic National Committee (DNC) in the Watergate Office Building in Washington, D.C. McCord was convicted on January 30, 1973 for various offenses arising out of the break-in.[1] The conviction was affirmed in full by the United States Court of Appeals for the District of Columbia on December 12, 1974.[2] The Supreme Court has denied McCord's petition for writ of certiorari.[3]

Also as a result of the break-in, the DNC filed, on June 20, 1972, a civil suit for damages against McCord, others involved in the break-in, and the Committee to Re-Elect the President [Richard M. Nixon].[4] In the course of that suit, McCord filed a cross-claim against the Committee to Re-Elect the President and several officials and agents of those organizations, seeking money damages because they had allegedly caused harm to McCord's reputation and had caused him to suffer severe physical, mental, and emotional strain. While the original suit has since reached settlement, McCord's cross-claim remains before this Court.

The instant action was filed on November 15, 1974. In the first count of his complaint, plaintiff challenges the validity of a certain agreement entered into on September 7, 1974, between former President Nixon and Arthur F. Sampson, Administrator of the General Services Administration, on behalf of the United States Government. The agreement pertained to control and ownership of various papers, and tape recordings made or retained in the White House during Mr. Nixon's Presidency.[5]

---

1. *United States v. Liddy, et al.*, Cr.No.1827–72 (D.D.C. Nov. 9, 1973).

2. *United States v. McCord*, 509 F.2d 334 (D.C.Cir. 1974).

3. 421 U.S. 930, 95 S.Ct. 1656, 44 L.Ed.2d 87 (1975).

4. *The Democratic National Committee, et al., v. James W. McCord, et al.*, Civil No. 1233–72 (D.D.C. filed June 20, 1972).

5. As to the tapes which are of paramount concern to McCord in this action, the agreement specifies that they are the sole legal property of Mr. Nixon; that they are to be stored in California under the joint custody of the parties to the agreement; that no reproductions of tapes are to be made without the consent of both Nixon and the government; that no person may listen to the tapes without Nixon's written approval; that Nixon will donate the tapes to the government in 1979; and that the tapes are to be destroyed on September 1, 1984 or upon Nixon's death, whichever shall occur first. Mr. Sampson has been enjoined from carrying out the agreement by Order of this Court dated October 21, 1974, as modified

Plaintiff McCord alleges that the transfer of the tape recordings outside of the District of Columbia, pursuant to the agreement, would injure him by hindering his "legitimate defense and appeal" in the criminal proceedings against him and prejudicing the pursuit of his cross-claim in the civil suit before this Court noted above.[6] Plaintiff accordingly requests that this Court declare the agreement null and void, enjoin defendant Sampson and his servants from carrying out the terms of the agreement, and compel defendant William Simon, Secretary of the Treasury, to order the Secret Service to maintain custody of and preserve the tapes in question.

In the second count of his complaint, plaintiff challenges the validity of the pardon granted to Mr. Nixon on September 7, 1974, by defendant President Gerald R. Ford for any and all unspecified crimes which Nixon committed or may have committed during the entire period of his Presidency.[7] Plaintiff asserts that Mr. Nixon's acceptance of President Ford's pardon amounts to an admission of guilt to unspecified, Watergate-related crimes. Such an admission by the alleged chief co-conspirator in the Watergate offenses will, McCord maintains, taint him with a presumption that he, too, is guilty of such crimes and therefore prejudice his attempts to obtain relief from his criminal conviction. Plaintiff also asserts a right under the Ninth Amendment to the Constitution of the United States to vindicate "the right of the people to be dealt with fairly by their elected or appointed officials and . . . to expect that wrongdoing by persons in public positions of trust will

be exposed and that justice will be done . . . ."[8] Accordingly, plaintiff seeks from this Court a declaration that the pardon is null and void.

The case is currently before the Court on defendants' motion to dismiss and plaintiff's opposition thereto. This Court grants defendants' motion because plaintiff has not, with respect to his alleged need for protection in collateral court proceedings, presented a justiciable case or controversy to this Court; and because plaintiff does not have standing to maintain his challenge of the pardon as a "private attorney general" seeking to protect the public's interest.

## II. DISCUSSION

A. WITH RESPECT TO HIS ALLEGED NEED FOR PROTECTION IN COLLATERAL COURT PROCEEDINGS, PLAINTIFF HAS NOT PRESENTED A JUSTICIABLE CASE OR CONTROVERSY.

■■ Plaintiff raises constitutional claims of potentially great import in his complaint seeking a determination that the tapes and papers agreement and the Presidential pardon are invalid. But, as the Supreme Court has remonstrated, even constitutional questions must be presented "in the context of a specific live grievance."[9] The Constitution requires nothing less in extending the federal courts' judicial power only to specified cases and controversies.[10] As Chief Justice Hughes framed the issue:

"A justiciable controversy is thus distinguished from a difference or dis-

by Court orders dated October 22, 1974, October 31, 1974, November 7, 1974, and May 22, 1975, in the consolidated cases of *Nixon v. Sampson, et al.*, Civil No. 74–1518 (D.D.C. filed October 17, 1974); *The Reporters Committee for Freedom of the Press, et al., v. Sampson, et al.*, Civil No. 74–1533 (D.D.C. filed October 21, 1974); and *Hellman, et al., v. Sampson, et al.*, Civil No. 74–1551 (D.D.C. filed October 24, 1974). The tapes remain under the government's control.

6. Plaintiff's Second Amended Complaint, at 4 (filed November 15, 1974). When this case was instituted, the Court of Appeals had yet to affirm McCord's conviction.

7. See Presidential Proc. 4311, 10 Week.Compil.Pres.Doc. 1103 (Sept. 8, 1974).

8. *Id.* page 7.

9. *Golden v. Zwickler*, 394 U.S. 103, 110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969).

10. *U.S.Const.* art. III, § 2.

pute of a hypothetical character . . .. The controversy must be definite and concrete . . .. It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." [11] "Case and controversy" is the first hurdle a litigant must clear; it is precisely this barrier which prevents plaintiff McCord from going forward in the instant case.

The Court first considers plaintiff's claim that this Court's failure to declare the tapes and papers agreement null and void would hinder his attempts to overturn his criminal conviction and would prejudice his pursuit of a cross-claim in the civil suit brought against him by the DNC. The gravamen of plaintiff's claim seems to be that "the physical transfer of the tapes outside of the District of Columbia" [12] will prevent him from effectively pursuing his legal remedies. Stripped to its essentials, plaintiff's request is for relief already effectively granted by this Court in *Nixon v. Sampson, et al.,* and consolidated cases. [13] The agreement has been enjoined; the tapes are within the Government's control and supervision; and the presidential materials have not been removed from the District of Columbia. McCord's alleged injury is thus contingent upon the dissolution of the injunctions in *Nixon v. Sampson, et al.,* and consolidated cases; it is not of the "real and

immediate" character which, according to the Supreme Court, the case and controversy requirement demands. [14] Moreover, the same issues raised in plaintiff's complaint—plus many more—are currently before the United States District Court for the District of Columbia in *Nixon v. Sampson, et al.,* and consolidated cases and before a three-judge district court in *Nixon v. Administrator of General Services, et al.* [15] Finally, plaintiff has not indicated why, even if the agreement were to go into effect and the tapes were to be transferred to California (where Mr. Nixon resides), McCord would be unable to obtain access to the Presidential materials under the subpoena powers of the courts. [16]

With respect to his attempts to overturn his criminal conviction, McCord alleges that it is necessary for this Court to declare null and void President Ford's pardon of Mr. Nixon. But a close look at the gist of this aspect of plaintiff's action reveals that it, too, fails to present a case or controversy which this Court is empowered to decide. When this action was originally filed, the Court of Appeals had yet to rule on plaintiff's appeal from his criminal conviction. Plaintiff contended that if the Court of Appeals granted him a new trial, he would be prejudiced in that proceeding by the taint by association stemming from the pardon. Since that time, the Court of Appeals has affirmed his conviction in its entirety, and the Supreme Court has declined to consider it further. [17] It is true that under 28 U.S.

11. *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937).

12. Second Amended Complaint, *supra* note 6, at 4.

13. See note 5, *supra.*

14. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (citations omitted).

15. Civil No. 74–1852 (D.D.C. filed December 20, 1974).

16. It appears more than likely that McCord would have access to these particular papers

if he demonstrated a legitimate need for them in attempting to overturn his criminal conviction: "The generalized assertion of [executive] privilege must yield to the demonstrated, specific need for evidence in a pending criminal trial." *United States v. Nixon, et al.,* 418 U.S. 683, 713, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The Court specifically declined to address the question of the availability of the Presidential materials in a civil proceeding. See n. 19, 418 U.S. at 712, 94 S.Ct. at 3110.

17. See notes 2 and 3, *supra.*

C. § 2255, plaintiff can still apply for a new trial or other relief to the court which originally sentenced him. But, while this Court is reluctant to speculate on the likelihood that plaintiff will obtain such relief, it appears to the Court questionable that the district court which originally convicted him will grant him relief after the Court of Appeals and the Supreme Court declined to do so. In any case, plaintiff's challenge to the pardon would be more appropriately made to the trial court if and when he is granted a new trial.[18] In its present form, plaintiff's asserted injury is at best not ripe for adjudication.[19] It is clearly "conjectural" and "hypothetical."[20] In short, plaintiff has not sustained and is not "immediately in danger of sustaining some direct injury."[21]

## B. PLAINTIFF DOES NOT HAVE STANDING TO MAINTAIN HIS CHALLENGE TO THE PARDON ON BEHALF OF ALL CITIZENS.

█ Plaintiff asserts as an independent basis for his challenge to the pardon that it deprives him "and all other citizens" of their rights, "guaranteed . . . by the Ninth Amendment," that the people "be dealt with fairly by their elected or appointed officials and . . . that wrongdoing by persons in public positions of trust will be exposed and that justice will be done . . . ."[22] It is clear that plaintiff does not have standing to maintain his challenge to the pardon in this vein, for he has not alleged concrete injury to himself:

> "[S]tanding to sue may not be predicated upon an interest of the kind . . . which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share. Concrete injury, whether actual or threatened, is . . . indispensable . . . ."
> *Schlesinger v. Reservists Committee to Stop the War,* 418 U.S. 208, 220, 94 S.Ct. 2925, 2932, 41 L.Ed.2d 706 (1974).[23]

There is direct precedent to support the finding that McCord does not have standing to maintain this action challenging the pardon on behalf of the public. In an action filed in the United

---

18. In affirming McCord's conviction, the Court of Appeals noted:

"[N]o claim has been made to us that McCord's conviction is legally vulnerable because of the pardon, and any legal questions that may arise from the pardon are not sufficiently focused by the adversary process to justify appellate consideration of their validity or substantiality at this time. Apart from his pending challenge to the pardon, . . . if appellant McCord has any constitutional claim it can be presented on collateral attack. We neither express nor intimate any opinion on whether any such claim may be non-frivolous. It would require an extension of existing case law on selective prosecution to novel circumstances."

509 F.2d at 350–51, n. 59.

Plaintiff seizes upon this language, suggesting it serves as an indication that the Court of Appeals would sanction the bringing of the action currently before this Court. See Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss at 5–6. But it seems clear to this Court that the Court of Appeals had in mind an action challenging not the validity of the pardon, but the validity of McCord's conviction in light of the *fact* of the pardon before trial of the alleged chief co-conspirator. It is only necessary to point out that the action currently before this Court is not such a collateral attack on plaintiff's conviction.

19. "The central concern of [the ripeness doctrine]," as in the instant case, "is that the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." 13 *Wright, Miller, and Cooper, Federal Practice and Procedure,* § 3532 at 238 (1975). See also *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669 (1974).

20. *Golden v. Zwickler,* 394 U.S. 103, 109–10, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

21. *Massachusetts v. Mellon,* 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923).

22. Second Amended Complaint, *supra* note 6, at 7.

23. *See also Warth v. Seldin,* —— U.S. ——, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *United States v. Richardson,* 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974).

States District Court for the District of Columbia last year,[24] plaintiff Joseph Koffler, a law professor, sought to have the pardon declared null and void. In dismissing that action, Judge Gerhard Gesell wrote:

> "When a President exercises [the] authority to pardon, as he frequently does, his action . . . cannot be reviewed by a court on the mere complaint of a citizen. The fact that plaintiff is a taxpayer, an attorney, and legal educator gives him no special standing different from any other citizen." [25]

Plaintiff McCord asserts, of course that he challenges the pardon not merely as a citizen, but also as a party who would be intimately affected by a determination as to its validity. But, as noted above, the probability that the continued existence of the pardon will injure him has dissipated due to the actions of the appellate courts. McCord stands in no better position than the plaintiff in *Koffler*.[26] This Court is in full accord with Judge Gesell and must likewise dismiss this action.

## III. CONCLUSION

In dismissing this case on jurisdictional grounds, this Court does not reach the merits of plaintiff's complaint. The serious nature of the claims which plaintiff has put forward is obvious, and the Court does not lightly refrain from considering the merits of the challenges to the agreement and the pardon as they allegedly affect plaintiff's rights. But this Court is of limited jurisdiction; the nature of our Constitutional system is such that the federal courts can only consider specified cases and controversies brought by parties with the requisite standing to sue. The complaint must therefore be dismissed.

An Order in accordance with the foregoing has been issued on the 11th day of July, 1975.

24. *Koffler v. Ford, et al.*, Civil No. 74–1406 (D.D.C. Sept. 25, 1974).

25. Order dismissing case, *id.*

26. *Amicus* counsel has argued that McCord can challenge the validity of the pardon under the rubric of equal protection. Counsel has stated that by equal protection he means that McCord has a right to equal treatment which has been denied because he is suffering the consequences of his acts while the alleged chief co-conspirator has gone free by virtue of an invalid pardon. Counsel cites the case of *Allied Stores of Ohio, Inc., v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed. 2d 480 (1959), as authority for that proposition. See Transcript of Oral Hearing of June 24, 1975 at 25–27.
In *Allied Stores*, an Ohio corporate taxpayer challenged on equal protection grounds an *ad valorem* state tax which subjected resident taxpayers' business property stored in warehouses to taxation while exempting the same type of property owned by non-residents. The taxpayer sought to have either the statute declared invalid in order that it could bear a proportionally smaller share of the state tax burden or to have the exemption as to stored merchandise applied to residents as well as non-residents. Had the taxpayer obtained the requested relief, it would have gained direct pecuniary benefit. There is a telling distinction between *Allied Stores* and McCord's situation. While it is true that in both *Allied Stores* and here a benefit was conferred differentially, in *Allied Stores* the elimination of the disparate treatment would have affected the litigant. In this case, if the Court should hold the pardon conferred upon Mr. Nixon invalid, McCord's situation would not be changed: he would continue to suffer the consequences of his actions. This Court infers from counsel's argument that McCord would receive some "satisfaction" in seeing Mr. Nixon prosecuted for crimes related to those for which McCord has been convicted; but such an "interest" does not rise to the level necessary to form the basis for standing. *See Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). Of course, if this action had been brought in an effort to alter McCord's situation, the result may have been different. See note 18, *supra*.