ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

January 7, 2010

The Honorable Rodney Ellis
Chair, Committee on Government Organization
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0754

Re: Authority of the Governor to grant a
posthumous pardon (RQ-0810-GA)

Dear Senator Ellis:

You ask about the power of the Governor to grant posthumous pardons and related questions regarding the binding authority of attorney general opinions, the legal procedures for challenging a pardon, and the authority of the Board of Pardons and Paroles (the "Board").[1] Based on a previous attorney general opinion, you tell us the Governor believes that he cannot grant a posthumous pardon without a constitutional amendment. Request Letter at 1–2. You therefore ask about his authority to do so.

The Texas Constitution authorizes the Governor to issue pardons in specific circumstances:

> In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons . . . .

TEX. CONST. art. IV, § 11(b); *see also* TEX. CODE CRIM. PROC. ANN. art. 48.01 (Vernon 2006).[2] Pursuant to this provision, Texas courts have stated that "[t]he Constitution of this state granting [the pardon] power to the Governor, it is for him alone to exercise without restraint or restriction from any source, other than the sovereigns of the state who wrote and adopted the Constitution." *Ex parte Rice*, 162 S.W. 891, 900 (Tex. Crim. App. 1913).

---

[1]Request Letter at 4 (*available at* http://www.texasattorneygeneral.gov).

[2]Article 48.01 of the Code of Criminal Procedure mirrors the language in article IV, section 11(b) of the Texas Constitution: "In all criminal cases, except treason and impeachment, the Governor shall have power, after conviction, on the written signed recommendation and advice of the Board of Pardons and Paroles, or a majority thereof, to grant reprieves and commutations of punishment and pardons . . . ." TEX. CODE CRIM. PROC. ANN. art. 48.01 (Vernon 2006).

Under this constitutional provision, the Governor's power is limited by requiring prior recommendation of the Board; however, he is otherwise entitled to grant pardons after a conviction in "*all criminal cases*, except treason and impeachment." TEX. CONST. art. IV, § 11(b) (emphasis added); *see State ex rel. Smith v. Blackwell*, 500 S.W.2d 97, 100 (Tex. Crim. App. 1973) (discussing the 1936 constitutional amendment that requires the Governor to act only upon the Board's recommendation). When interpreting the Texas Constitution, we presume its language was carefully selected, construe its words as they are generally understood, and "rely heavily on the plain language of the Constitution's literal text." *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000). The plain language of the constitution does not expressly address whether the Governor may issue posthumous pardons. However, because the constitution has given the Governor pardon power in all criminal cases except treason and impeachment and has not otherwise limited his authority to grant posthumous pardons, it could be interpreted as implicitly authorizing him to grant posthumous pardons in criminal cases, so long as all constitutional requirements are met. *See* TEX. CONST. art. IV, § 11.

Furthermore, the modern development of United States Supreme Court precedent supports the Governor's authority to issue posthumous pardons. As you recognize, Attorney General Opinion C-471, issued in 1965, concluded otherwise. Although no Texas cases had addressed the authority of the Governor to grant posthumous pardons, that opinion concluded that because the deceased was unable to accept the pardon, the Governor did not have authority to grant it. Tex. Att'y Gen. Op. No. C-471 (1965) at 1. The case law on which that opinion relied did not address the Governor's pardon authority but instead addressed the common-law requirement that a pardon be accepted in order to be valid. *See, e.g., Hunnicutt v. State*, 18 Tex. Ct. App. 498, 517, 520, 1885 WL 6857 (Tex. Ct. App. 1885). This acceptance requirement stemmed from early United States Supreme Court common law stating that "[a] pardon is a deed, to the validity of which, delivery is essential, and delivery is not complete, without acceptance. It may then be rejected by the person to whom it is tendered; and if it be rejected, we have discovered no power in a court to force it on him." *United States v. Wilson*, 32 U.S. 150, 161 (1833). Texas courts thereafter adopted the acceptance doctrine, recognizing that the power of the Governor, "under the State Constitution, to pardon offenses, is of the same general nature as that conferred upon the President of the United States." *See Hunnicutt*, 18 Tex. Ct. App. at 517, 520. However, the United States Supreme Court has since recognized that "the requirement of consent [to a pardon] was a legal fiction at best" and has generally abandoned the acceptance doctrine since adopting it in 1833. *Schick v. Reed*, 419 U.S. 256, 261 (1974). In doing so, it has recognized that it is the public welfare, not the consent of the grantee, that should be the basis for issuing a pardon:

> When granted [a pardon] is the determination of the ultimate authority that the public welfare will be better served by inflicting less than what the judgment fixed. Just as the original punishment would be imposed without regard to the prisoner's consent and in the teeth of his will, whether he liked it or not, the public welfare, not his consent determines what shall be done.

*Biddle v. Perovich*, 274 U.S. 480, 486 (1927) (citation omitted).

No Texas court has expressly rejected the idea that acceptance is necessary in order for a pardon to be valid; however, the Texas cases have generally applied the acceptance requirement to situations involving conditional pardons. *See, e.g., Ex parte Davenport*, 7 S.W.2d 589, 591 (Tex. Crim. App. 1927) ("It is essential to the validity of a conditional pardon that it be accepted by the person in whose favor it is issued."); *Ex parte Frazier*, 239 S.W. 972, 973 (Tex. Crim. App. 1922) (upholding Governor's revocation of a conditional pardon). While there may exist a need for acceptance when conditions are placed on the pardoned recipient, there does not appear to be a need for acceptance if no such conditions are present, such as in the instance of a posthumous pardon.[3] *See Wilson*, 32 U.S. at 161 ("A pardon may be conditional; and the condition may be more objectionable than the punishment inflicted by the judgment."); *see also Biddle*, 274 U.S. at 486–87 ("So far as a pardon legitimately cuts down a penalty, . . . the convict's consent is not required."). Given the shift in United States Supreme Court precedent that formed the basis of the prior Texas decisions, it is possible that, were a Texas court to decide the issue today, it would reject the need for acceptance of an unconditional pardon as the United States Supreme Court has done.

It is also worth noting that legislation recently enacted by the Texas Legislature appears to recognize the shift in United States Supreme Court precedent. Amendments made to section 103.001 of the Texas Civil Practice and Remedies Code during the eighty-first legislative session allow deceased persons, "including a person who received a posthumous pardon," to receive compensation for wrongful imprisonment if certain conditions are met. TEX. CIV. PRAC. & REM. CODE ANN. § 103.001(a), (c) (Vernon Supp. 2009). Thus, given no express limitation in the constitution for a posthumous pardon, the shift in United States Supreme Court precedent away from the acceptance doctrine, and the recent legislative changes recognizing the Governor's authority to grant a posthumous pardon, we believe a court would likely conclude that the Governor may grant such a pardon without a constitutional amendment, assuming all other constitutional requirements are met. In doing so, it would overrule Attorney General Opinion C-471.

Your second question asks whether the prior attorney general opinion concluding that the Governor did not have authority to issue a posthumous pardon was "legally binding on the governor on this issue." Request Letter at 4. While they are persuasive authority, attorney general opinions are not binding. *Holmes v. Morales*, 924 S.W.2d 920, 924 (Tex. 1996). However, both courts and state officials often use them for guidance on specific legal issues, especially when there is otherwise limited authority addressing an issue. *S. Tex. Coll. of Law v. Tex. Higher Educ. Coordinating Bd.*, 40 S.W.3d 130, 137 n.1 (Tex. App.—Austin 2000, pet. denied). As discussed above, we find no Texas case that addresses the authority of the Governor to grant a posthumous pardon. Based on the common-law acceptance doctrine, Attorney General Opinion C-471 advised that "the Governor [has] no power to grant a posthumous full pardon to a deceased convicted felon." Tex. Att'y Gen. Op. No. C-471 (1965) at 2. However, in the forty-five years since opinion C-471 was issued, the

---

[3]Presumably rejecting the idea that acceptance is required for an unconditional pardon to be valid, at least nine states, either through their governors or their boards of pardons and paroles, have recently granted posthumous pardons. *See* Darryl W. Jackson, et al., *Bending Toward Justice: The Posthumous Pardon of Lieutenant Henry Ossian Flipper*, 74 IND. L.J. 1251, 1277 (1999). Two Presidents of the United States have likewise granted posthumous pardons. *Id.*; Eric Lichtblau, *Jailed for Aiding Israel, but Pardoned by Bush*, N.Y. TIMES, Dec. 24, 2008, *available at* http://www.nytimes.com/2008/12/24/washington/24pardons.html (last visited Jan. 6, 2010).

understanding of the acceptance doctrine has changed. *See Schick*, 419 U.S. at 261 ("requirement of consent was a legal fiction at best"); *cf. Cherry v. State*, 361 F. Supp. 1284, 1288 (N.D. Tex. 1973) ("'commutation of sentence' . . . may be imposed without consent of the convict"). To the extent that the Governor was previously advised that he was prohibited from issuing a posthumous pardon, it was reasonable for him to rely on such advice. *See Weaver v. Head*, 984 S.W.2d 744, 746 (Tex. App.—Texarkana 1999, no pet.) (indicating that public officials sometimes show they acted in good faith by relying on an attorney general opinion).

Your third question asks about who has standing, and on what grounds, to challenge the Governor's pardon and what procedure would be used to do so. Request Letter at 4. Under Texas law, "standing limits subject matter jurisdiction to cases involving a distinct injury to the plaintiff and 'a real controversy between the parties, which . . . will be actually determined by the judicial declaration sought.'" *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) (quoting *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 517–18 (Tex. 1995)). In *Brown v. Todd*, the Texas Supreme Court reviewed a city council member's standing to challenge an executive order issued by the mayor. *Id.* at 299. In doing so, it adopted a federal standing requirement, demanding that "'[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id.* at 305 (quoting *Raines v. Byrd*, 521 U.S. 811, 818–19 (1997)). Finding the city council member lacked standing, the court emphasized that the United States Supreme Court has "consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute" and that the injury suffered is "concrete and particularized." *Id.* (quoting *Raines*, 521 U.S. at 819).

We have found no Texas case that specifically addresses standing to challenge a pardon issued by the Governor. However, it is instructive that a federal district court dismissed a plaintiff's challenge to the President's issuance of a pardon because the plaintiff did not allege concrete injury to himself. *McCord v. Ford*, 398 F. Supp. 750, 754–55 (D.D.C. 1975); *see also Brown*, 53 S.W.3d at 305 (adopting a federal standing requirement requiring, among other things, that the plaintiff establish concrete injury and stating that the court may look to federal standing requirements when considering an issue of first impression). We cannot predict in the abstract all circumstances that may create standing to challenge the Governor's issuance of a pardon. However, a party would likely lack standing to challenge the Governor's pardon unless the challenging party can prove a personal and concrete injury fairly traceable to the Governor's granting of an unlawful pardon and likely to be redressed by the requested relief.

What procedure would be used to challenge the Governor's pardon is a separate question from who has standing to do so. We have been unable to find a Texas case in which the Governor's decision to grant a pardon was successfully challenged. Furthermore, Texas courts have generally refused to review such decisions, explaining that they have "no power to review the wisdom of an act of the Governor so long as he operates within the law in exercising his own discretion and judgment in the performance of his constitutional duties." *Ex parte Pitt*, 206 S.W.2d 596, 596 (Tex. Crim. App. 1947); *see Ex parte Rice*, 162 S.W. at 901 ("the right to grant pardons is conferred on the Governor by the Constitution, and in granting them his actions are not subject to review"); *see also Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 284 (1998) ("Clemency proceedings are

not part of the . . . adjudicatory process. . . .  They are conducted by the executive branch, independent of direct appeal and collateral relief proceedings."). Given the lack of precedent for a challenge to the Governor's issuance of a pardon and the general refusal of courts to review the Governor's decision, we cannot advise you as to a procedure that might be used to successfully challenge the Governor's pardon.

Your final question asks whether "the Board of Pardons and Paroles [is] constitutionally authorized to recommend a posthumous pardon[.]" Request Letter at 4. The constitution requires the Legislature to "establish a Board of Pardons and Paroles" and authorizes the Board to provide "written signed recommendation and advice" to the Governor regarding pardons. TEX. CONST. art. IV, § 11(a)–(b). Pursuant to this provision, the Legislature requires that, "[o]n request of the governor, the board . . . investigate a person being considered by the governor for . . . pardon." TEX. GOV'T CODE ANN. § 508.050(a)(1) (Vernon 2004). "The board shall report to the governor on its investigation and make recommendations about the person to the governor." *Id.* § 508.050(b).

Like the Governor's power, the Texas Constitution gives the Board the power to recommend pardons in all criminal cases except treason and impeachment and has not otherwise limited its authority to recommend posthumous pardons. *See* TEX. CONST. art. IV, § 11(b). Under its own rules,

> the board will consider applications for recommendation to the governor for a pardon for innocence upon receipt of:
>
> (1) a written recommendation of at least two of the current trial officials of the court of conviction, with one trial official submitting documentary evidence of actual innocence; or
>
> (2) a certified order or judgment of a court having jurisdiction accompanied by a certified copy of the findings of fact and conclusions of law where the court recommends that the Court of Criminal Appeals grant state habeas relief on the grounds of actual innocence.

37 TEX. ADMIN. CODE § 143.2(a) (2009) (Tex. Bd. of Pardons and Paroles, Pardons for Innocence). We find no authority otherwise limiting who the Board may recommend for a pardon. We therefore believe a court would likely conclude that the Board is authorized to recommend that the Governor grant a posthumous pardon.

**S U M M A R Y**

The Texas Constitution does not expressly address or limit the Governor's authority to grant a posthumous pardon. While a prior attorney general opinion concluded he could not grant a posthumous pardon due to the recipient's inability to accept it, modern United States Supreme Court decisions reject the common-law acceptance requirement that formed the basis of that opinion and the underlying Texas authorities. Given this shift in Supreme Court precedent and the Legislature's apparent recognition of this shift, we believe a Texas court would likely conclude that the Governor may grant a posthumous pardon under current Texas law, so long as all other constitutional requirements are met.

While they are persuasive authority, attorney general opinions are not binding; however, to the extent that the Governor was previously advised in an attorney general opinion that Texas law prohibited him from issuing a posthumous pardon, it was reasonable for him to rely on such advice.

Only those able to prove a concrete injury that can be redressed by the courts will have standing to challenge the Governor's decision to grant a pardon. Texas courts generally refuse to review the Governor's exercise of the pardon power so long as he operates within the constitutional restraints of that power.

We believe a court would likely conclude that the Board of Pardons and Paroles is authorized to recommend that the Governor grant a posthumous pardon.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee